UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LEONARDO CABRERA,**

        **Plaintiff,**

**v.**                                            **Case No:  6:12-cv-675-Orl-36GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

**ORDER**

This cause comes before the Court on Plaintiff Leonardo Cabrera's ("Cabrera") Complaint for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for benefits.  Doc. 1.  Magistrate Judge Gregory J. Kelly submitted a Report and Recommendation ("R&R"), recommending that the Court affirm the Commissioner's decision.  Doc. 16.

After an independent *de novo* review of the record, including Cabrera's Objections to the Magistrate Judge's Report and Recommendation ("Objections") (Doc. 17) and Defendant's Response to Plaintiff's Objections to the Magistrate Judge's Report and Recommendation ("Response") (Doc. 19), the Court agrees with the findings of fact and conclusions of law in the R&R.

**I.     BACKGROUND**

On July 17, 2008, Cabrera filed an application for disability insurance benefits ("Application") with the Social Security Administration ("SSA").  R. 82-85.  Cabrera's Application was denied initially and upon reconsideration.  R. 66-69, 73-75.

On September 8, 2010, Cabrera had a hearing before an Administrative Law Judge ("ALJ"), at which he testified. R. 40-61. The ALJ issued a written decision finding that Cabrera suffered from the following severe impairments: "coronary artery disease with a history of myocardial infarction, coronary artery bypass graft, stenting, and multiple cardiac catheterizations; and, degenerative disc disease of the lumbar spine with a herniated nucleous pulposus and central stenosis . . . ." R. 23-39. The ALJ concluded that Cabrera did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 29. With respect to Cabrera's residual functional capacity ("RFC"), the ALJ reviewed the record and found:

> [Cabrera] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) as he could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours total in an 8-hour workday, sit for 6 hours total in an 8-hour workday, and push/pull unlimitedly, other than as shown for the lift and/or carry limitations. [Cabrera] could frequently climb ramps and stairs, but only occasionally climb ladders, ropes, or scaffolds. He could frequently balance, stoop, kneel, crouch, and crawl, but should avoid concentrated exposure to extreme heat and vibration.

*Id.* In comparing Cabrera's RFC with the physical and mental demands of his past relevant work as a loan officer, the ALJ found that Cabrera was able to perform his past relevant work as it is generally performed. R. 35. Specifically, the ALJ found that Cabrera has the RFC to do light work. *Id.* As the work of a loan officer is skilled work generally performed at a sedentary exertional level, according to the Dictionary of Occupational Titles ("DOT"), the ALJ determined that Cabrera had the capacity to do sedentary work. *Id.* Accordingly, the ALJ concluded that Cabrera was not disabled within the meaning of the Social Security Act. *Id.*

On March 9, 2012, the Social Security Appeals Council denied Cabrera's request for review. R. 1-7. On May 3, 2012, Cabrera filed a Complaint in this Court, seeking judicial review of the Commissioner's decision. Doc. 1.

Upon review of the DOT and the administrative record, Magistrate Judge Kelly recommended that the Court affirm the decision of the Commissioner and close this case. R&R at 17. On July 2, 2013, Cabrera filed Objections, arguing, as he did before the Magistrate Judge, that: (1) the ALJ failed to follow the treating physician rule with respect to Dr. Shah's opinion by giving the opinion little weight instead of controlling weight, obj. at 2-4; (2) the ALJ failed to properly evaluate Cabrera's credibility, *id.* at 4-6; and (3) the ALJ misclassified Cabrera's past relevant work, *id.* at 6-7.

## II.   LEGAL STANDARDS

### A.   Review of a Report and Recommendation

Federal Rule of Civil Procedure 72(b)(2), in pertinent part, provides that "a party may serve and file specific written objections to the proposed findings and recommendations" of a magistrate judge. When a party makes a timely and specific objection to a finding of fact in a Report and Recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. v. State Bd. of Educ. of State of Georgia*, 896 F.2d 507, 512 (11th Cir. 1990). The district judge may accept, reject, or modify, in whole or in part, the Report and Recommendation of the magistrate judge. Fed. R. Civ. P. 72(b)(3). The district judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions. *Id*.

### B.   Review of the Commissioner's Decision

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and is based upon proper legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Id*.

Where the Commissioner's decision is supported by substantial evidence, the Court must affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. 42 U.S.C. § 405(g); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) ("If the Commissioner's decision is supported by substantial evidence, we must affirm, even if the proof preponderates against it."). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its own] judgment for that of the [Commissioner]." *Phillips*, 357 F.3d at 1240 n.8 (quotations omitted).

### C. An ALJ's Five-Step Disability Analysis

The SSA has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Eleventh Circuit has explained this process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The plaintiff has the burden of proof on the first four steps; the Commissioner carries the burden on the fifth step. *Wright v. Comm'r of Soc. Sec.*, 327 F. App'x 135, 136-37 (11th Cir. 2009). If it is determined at any step in the analysis that the claimant is disabled or not disabled, the evaluation does not proceed. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### III. DISCUSSION

#### A. The ALJ's Decision to Give Dr. Shah's Opinion Little Weight Did Not Violate the Treating Physician Rule.

Cabrera argues, as he did before the Magistrate Judge, that the ALJ failed to follow the treating physician rule with respect to the medical opinion of Dr. Neerav Shah, Cabrera's treating cardiologist. *See* Obj. at 2-4. As the Magistrate Judge noted, "[a]bsent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citations omitted); *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (internal citations omitted). If good cause exists, "an ALJ may disregard a treating physician's opinion, but must clearly articulate the reasons for doing so. *Id*.

In this case, the ALJ gave Dr. Shah's opinion "little, rather than controlling weight" because the ALJ found that Dr. Shah's opinion regarding Cabrera's limitations was "not well supported by the evidence and [was] inconsistent with the overall record." R. 34. Specifically, the ALJ noted that Dr. Shah's opinion was "contrary [to] his own treating records" and "unsupported by treatment and therapy with positive results [as well as] minimal use of nitroglycerine," taken to relieve Cabrera's symptoms. *Id.*

Cabrera argues that the ALJ's finding is "contradicted by the evidence" and cites as support the same portions of the record as cited in his Memorandum of Law in Support of His Position ("Memo in Support"). Doc. 14; Obj. at 2-3. Additionally, Cabrera concludes that, based on the evidence, Dr. Shah's opinion should have been given controlling weight. Obj. at 3.

The Commissioner responds that the ALJ properly considered Dr. Shah's opinion and provided good reasons supported by substantial evidence for affording Dr. Shah's opinion little weight. Resp. at 2.

The Court reiterates the Magistrate Judge's review of the appropriate standard here, which Cabrera did not address in his Objections. R&R at 9. "Where evidence is conflicting, as is the case here, it is the responsibility of the ALJ, not the Court, to resolve those conflicts in the evidence." *Id.* (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (the court will affirm even if it finds that the evidence preponderates against the Commissioner's decision and the court would have come to a different decision based on the same facts so long as the decision applies the correct legal principles and is supported by substantial evidence)). As noted above, the Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips*, 357 F.3d at 1240 n.8 (citations omitted).

Here, the Magistrate Judge found that the ALJ articulated good cause supporting his decision to decline to give Dr. Shah's opinion "substantial weight" and that the ALJ's reasoning is supported by substantial evidence in the record. R&R at 6-9. In the R&R, the Magistrate Judge recounted those portions of the record articulated by the ALJ that support this conclusion. *Id.* Specifically, the Magistrate Judge detailed the review of the medical record conducted by the ALJ related to Cabrera's cardiac impairments and symptoms, including treatment from Dr. Shah. *Id.* at 6. The Magistrate Judge then noted that the ALJ summarized the testing and examinations that yielded negative and normal findings, catheterizations that failed to identify support for Cabrera's complaints, positive results obtained from treatment, minimal use of nitroglycerine for symptom relief, and a lack of any treatment since October 2009. *Id.* at 9. After an independent

review of the ALJ's reasoning and the evidence, the Court agrees with the Magistrate Judge's assessment. Accordingly, the Court rejects Plaintiff Cabrera's objection here.

Cabrera next argues that even if the ALJ was not required to give Dr. Shah's opinion controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927," which Cabrera argues, as he did to the Magistrate Judge, the ALJ failed to do. *See* SSR 96-2P, 1996 WL 374188 (July 2, 1996), Obj. at 3. Those factors are: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) the consistency of the opinion with the record as a whole; 5) the physician's specialization in the medical condition at issue; and 6) other factors which tend to support or contradict the opinion. *See* 20 CFR § 404.1527 (c)(2)-(c)(6). The ALJ's failure to consider these factors, Cabrera argues, was not harmless error. Obj. at 4.

First, the ALJ specifically stated that "[t]he undersigned has . . . considered opinion evidence in accordance with the requirements of 20 CFR § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." R. 29. Additionally, the Court agrees with the Magistrate Judge that the ALJ complied with 20 CFR § 404.1527 (c)(2)-(c)(6) in deciding to give Dr. Shah's opinion little weight because: 1) Dr. Shah's opinion was inconsistent with his own records, 2) treatment results were positive, and 3) Cabrera made minimal use of nitroglycerine to relieve his symptoms. *See* R. 34. Therefore, the ALJ articulated good cause, supported by substantial evidence, for giving Dr. Shah's opinion little weight. *Id.* Accordingly, the Court rejects Cabrera's argument here.

Cabrera also argues that the Magistrate Judge failed to address what evidence provided substantial evidence for the ALJ's RFC finding, that the only evidence relied on by the ALJ was from a non-examining State Agency physician who reviewed a limited record, and that this

7

opinion, standing alone, does not constitute substantial evidence. Obj. at 4. Because this "non-examining source failed to review an adequately developed record or explain the limitations found for Mr. Cabrera and because no other evidence supports this opinion, it was insufficient to support the RFC found for Plaintiff in this case," according to Cabrera. *Id.* Cabrera's argument was not presented to the Magistrate Judge, so the Court will address it here.

The ALJ is tasked with assessing a claimant's RFC based on all the relevant evidence in the claimant's case record. *See* 20 C.F.R. §§ 404.1545 and 404.1546; *Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 831 (11th Cir. 2013) ("The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite her impairments."). As noted above, the ALJ reviewed the record and found that Cabrera's RFC was as follows:

> [Cabrera] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) as he could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours total in an 8-hour workday, sit for 6 hours total in an 8-hour workday, and push/pull unlimitedly, other than as shown for the lift and/or carry limitations. [Cabrera] could frequently climb ramps and stairs, but occasionally climb ladders, ropes, or scaffolds. He could frequently balance, stoop, kneel, crouch, and crawl, but should avoid concentrated exposure to extreme heat and vibration.

R. 29. The ALJ explained that:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

*Id.*

The ALJ considers a claimant's testimony of pain and other subjective symptoms where the claimant meets a three-part standard. *Strickland*, 516 F. App'x at 831. First, evidence of an underlying medical condition must exist. *Id.* If that threshold is met, then there must be either

objective medical evidence that confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptoms. *Id.* If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce his symptoms, the ALJ must then evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. *Id.* In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and her doctors. *Id.* The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms. *Id.* at 831-32; 20 C.F.R. § 404.1529(c). The ALJ then will examine the claimant's statements regarding his symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record. *Strickland*, 516 F. App'x at 832; 20 C.F.R. § 404.1529(c)(4).

If the ALJ decides not to credit the claimant's testimony as to his subjective symptoms, the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility finding. *Strickland*, 516 F. App'x at 832. While the ALJ does not have to cite particular phrases or formulations, broad findings that a claimant was incredible and could work are, alone, insufficient. *Id.* The ALJ's articulated reasons must also be supported by substantial evidence. *Id.*

After considering Cabrera's testimony and all of the other evidence, the ALJ found that:

> the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. 31.

The ALJ then reviewed, in detail, the medical reports from Drs. Louis J. Raso and Shah as well as records from the Palms West Hospital and Palm Beach Gardens Medical Center, to make the following conclusions regarding Cabrera's alleged symptoms:

> despite the claimant's testimony regarding the frequency and duration of chest pains, the treating records revealed that he at times was asymptomatic and had minimal angina with minimal to no use of nitro to resolve pain. Treatment has consisted of regular cardiac follow-ups with no abnormal findings and a heart medication regimen. The claimant has not had significant hospitalizations or recurrent MIs [myocardial infarctions].
>
> . . .
>
> Although the claimant has back pain, treatment has been very limited, minimal, and conservative.

R. 31-33.

The ALJ then reviewed the opinion evidence from Drs. Raso and Shah, and from state agency medical consultants Drs. David Guttman and Bettye Stanley. R. 34. The consultants completed an RFC assessment at the initial and reconsideration levels. *Id.* The ALJ found that both consultants similarly opined regarding Cabrera's ability to lift/carry, stand/walk, sit, and push/pull, but that where they diverged, Dr. Stanley's assessment was more consistent with the record as a whole and that "additional evidence admitted into the record at the hearing level did not diminish that assessment." *Id.*

The ALJ concluded that:

> the claimant's allegations of disability are unsupported by the medical records, including objective evidence and medically acceptable credible opinions and [concluded that Cabrera] has the residual functional capacity to perform light work. The above residual functional capacity assessment is supported by unremarkable cardiac follow-ups and a cardiac medication regimen, lack of extensive hospitalizations or recurrent MIs, unremarkable physical examinations, including full lumbar range of motion with 5/5 strength, and conservative treatment for lumbar pain consisting of injections. The residual functional capacity is supported by the claimant's ability to perform activities of daily living, including driving, shopping, watching television, playing on the computer, cooking, some cleaning, and performing work around the house (such as installing closet doors). The medical record did not support the claimant's allegations of physical limitations to the extent that he would be unable to perform any work on a sustained basis.

R. 34-35.

Thus, it is clear that the ALJ's RFC finding was based on a thorough review of the record as a whole – Cabrera's testimony, opinion evidence from all medical doctors involved, and hospital records – and that, the ALJ's decision to accord Dr. Stanley's RFC assessment "great weight" was because that assessment was "more consistent with the record as a whole" and additional evidence submitted did not diminish that assessment. R. 34. Therefore, the Court finds that the ALJ sufficiently articulated the evidence used to determine the RFC and that this evidence was substantial in supporting that assessment. Accordingly, Cabrera's argument here is without merit.

### B. The ALJ's Findings as to Plaintiff's Credibility Are Supported by Substantial Evidence.

Cabrera argues in his Objections, as he did before the Magistrate Judge, that the ALJ's reasons for not finding his statements credible were without substantial support. Obj. at 6. As noted above, the ALJ evaluated Cabrera's testimony using a three-part standard and considered the entire record in making her determination regarding his testimony. If the ALJ decides not to credit the claimant's testimony as to his subjective symptoms, the ALJ must articulate explicit

and adequate reasons for doing so. After considering Cabrera's testimony and all of the other evidence, the ALJ found that:

> the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment.

R. 31.

> Specifically, the ALJ noted that:
>
> Despite chronic CAD [coronary artery disease], the claimant has not required treatment or extensive hospitalizations due to MI or angina symptoms. In fact, he did not seek hospital treatment for complaints of chest pain until November 8, 2007, which is more than 1 year after his alleged onset date of disability. Hospital records from Palms West Hospital revealed that he last had an MI in 2004. . . . He was treated with nitroglycerine (nitro) in the ER with relief. Thereafter, he had no recurrent chest pain, nausea, vomiting, dizziness, or loss or consciousness. Cardiac enzymes were negative and he had no EKG changes.
>
> . . .
>
> Subsequently, hospital records dated August 7, 2008 from Palm Beach Gardens Medical Center showed that the claimant presented as a walk-in to the emergency room with complaints of intermittent left sided chest pain since the prior day, with radiation into his left arm that day. . . . It was noted that the claimant had not recently seen a physician, but called to get an appointment, and was instead told to go to the emergency department. Severity of symptoms were assessed as mild. The patient was given nitro to relieve the pain.
>
> . . .
>
> Daily treatment records from Dr. Shah dated February 11, 2009 to April 3, 2009 showed that the claimant typically had a normal sinus rhythm, had no angina or angina equivalent episodes within a 24-hour period, and *did not require the use of nitro*. *During this 3-month period*, the claimant had a single episode of angina or angina equivalent, with a "5-6" intensity, an average duration of no more than 1 minute, and *a single use of nitro on February 26, 2009*. Thereafter, Dr. Shah noted on April 7, 2009 that the claimant continued to complain of chest pain and claudication; however, lower extremity dopplers showed that his ABI was greater than 1 and he had an angiogram 2 years prior that was non-critical. It was also noted that chest pains and claudication were mild and less frequent . . . . Otherwise, he had no shortness of breath, leg edema, dizziness, or fatigue. *After a period of 5 months without complaint, the claimant reported strong pain in the*

*chest* and numbness in the hands, *but did not use nitro*. Following the cardiac catheterization done in October 2009 . . . the claimant has not received treatment through the present.

Accordingly, despite the claimant's testimony regarding the frequency and duration of chest pains, the treating records revealed that he at times was asymptomatic and had minimal angina with minimal to no use of nitro to resolve pain. Treatment has consisted of regular cardiac follow-ups with no abnormal findings and a heart medication regimen. The claimant has not had significant hospitalizations or recurrent MIs [myocardial infarctions].

. . .

the claimant's allegations of disability are unsupported by the medical records, including objective evidence and medically acceptable credible opinions and [concluded that Cabrera] has the residual functional capacity to perform light work. The above residual functional capacity assessment is supported by unremarkable cardiac follow-ups and a cardiac medication regimen, lack of extensive hospitalizations or recurrent MIs, unremarkable physical examinations, including full lumbar range of motion with 5/5 strength, and conservative treatment for lumbar pain consisting of injections. The residual functional capacity is supported by the claimant's ability to perform activities of daily living, including driving, shopping, watching television, playing on the computer, cooking, some cleaning, and performing work around the house (such as installing closet doors). The medical record did not support the claimant's allegations of physical limitations to the extent that he would be unable to perform any work on a sustained basis.

R. 32-35 (emphasis added); R. 195, 207, 683, 685, 687-737, 740-83.

Cabrera first takes issue with the ALJ pointing out that treating records revealed that Cabrera was asymptomatic "at times" as not being inconsistent with his testimony because he never claimed to experience constant chest pain. Obj. at 5. Instead, he says he testified that he experienced chest pain three or four times per week. *Id.* Second, Cabrera argues that the ALJ's finding that treatment consisting of regular cardiac follow-ups yielded no abnormal findings was contrary to the record. *Id.* However, the fact that Cabrera made minimal use of nitro, as noted in the italicized portions of the ALJ passage above, belies his allegation that he experienced chest pains as frequently as alleged. Additionally, the ALJ's statement that Cabrera's *regular follow-up visits* yielded no abnormal findings has substantial support in the record.

13

Cabrera's third argument is that the ALJ's finding that Cabrera had no long-term hospitalizations or recurrent myocardial infarctions was contrary to the record as Cabrera was hospitalized twice – once on November 9, 2007 and the second time on August 7, 2008 – and that there is no requirement that he have been hospitalized or have recurrent heart attacks to establish that he is disabled due to his cardiac conditions. Obj. at 5. However, Cabrera's statement is not contrary to the ALJ's finding that he had no *long-term* hospitalizations. In addition, both of his hospital visits were prior to the regular treatment Cabrera received from Dr. Shah consisting of "regular cardiac follow-ups . . . and a heart medication regimen." R. 33. Moreover, although long-term hospitalizations or recurrent heart attacks are not required in order to establish a disability, clearly, evidence of them would support testimony as to the severity of the alleged symptoms.

Finally, Cabrera thought there was no support for the ALJ's comment that Cabrera lacked motivation to work as he testified that he attempted to return to work on several occasions. Obj. at 5. The ALJ stated that "there appears to be an issue of motivation to work as it was noted in the record that the claimant had retired." R. 35 (citing R. 181, notes from visit to Dr. Raso on September 9, 2008, stating, "The patient's main occupation is retired."). The ALJ noted, "it can be reasonabl[y] concluded that the claimant's lack of work has been by choice, rather than due to his conditions. Any such limitations are therefore also likely self-imposed." R. 35. Clearly, a statement from Cabrera to his treating physician that he is "retired" instead of unemployed indicates that he does not intend to return to work and was not actively looking for work. This supports the ALJ's conclusion as to a possible reason for the inconsistency in Cabrera's testimony regarding his symptoms and information in the treatment records.

14

Accordingly, there is substantial support in the record for the ALJ's conclusion that Cabrera's testimony was not credible and the ALJ articulated explicit and adequate reasons for coming to such a conclusion. Thus, Cabrera's objection here must fail.

### C.     The ALJ Properly Classified Cabrera's Past Relevant Work.

At the hearing, Cabrera described his prior work as obtaining financing for customers with bad credit who are trying to purchase motor vehicles. *See* R. 46. The ALJ classified Cabrera's past relevant work as a loan officer, and stated that such work is skilled work that is *generally* performed at the sedentary exertional level, according to the DOT, No. 186.267-018. R. 35. In comparing Cabrera's RFC with the physical and mental demands of his past relevant work as a loan officer, the ALJ found that Cabrera was able to perform his past relevant work as it is *generally* performed. R. 35.

Cabrera argues, as he did to the Magistrate Judge, that there is no evidence that he ever performed or knows how to perform the more generalized job of a loan officer and that, therefore, the ALJ's past relevant work determination is without substantial support. Obj. at 6-7. However, as noted by the Magistrate Judge, in the Eleventh Circuit, the claimant bears the burden of proving that he cannot perform the requirements of his past relevant work both as he actually performed it and as it is generally performed in the national economy. *See Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986). The Eleventh Circuit "require[s] that a claimant prove that he is not able to perform his past kind of work, not that he merely be unable to perform a specific job he held in the past." *Hernandez v. Comm'r of Soc. Sec.*, 433 Fed. App'x 821, 822 (11th Cir. 2011) (quotations omitted). As the Magistrate Judge noted, Cabrera has failed to meet his burden to demonstrate that he cannot perform his past relevant work as it is *generally* performed in the national economy. For the detailed reasons provided in the Magistrate Judge's R&R, Cabrera's objection here fails.

## IV. CONCLUSION

After careful consideration of the Report and Recommendation of the Magistrate Judge, in conjunction with an independent examination of the court file, the Court is of the opinion that the Magistrate Judge's Report and Recommendation should be adopted, confirmed, and approved in all respects. Accordingly, it is hereby **ORDERED and ADJUDGED**:

1. The Report and Recommendation of the Magistrate Judge (Doc. 16) is **adopted, confirmed and approved** in all respects and is made a part of this Order for all purposes, including appellate review.

2. The decision of the Commissioner of Social Security is **AFFIRMED**.

3. The clerk is directed to terminate all pending motions and deadlines, enter judgment accordingly, and **CLOSE** this case.

**DONE** and **ORDERED** in Orlando, Florida on September 20, 2013.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties
United States Magistrate Judge Gregory J. Kelly